2018 WY 5

**In the MATTER OF the Termination of Parental Rights to: ASA, Minor Child.**

**Kenneth Blake Anastos, Appellant (Respondent),**

v.

**State of Wyoming, Department of Family Services, Appellee (Petitioner).**

S-17-0157

Supreme Court of Wyoming.

January 19, 2018

---

Representing Appellant: Jennifer K. Stone, Schilling & Winn, PC, Laramie, Wyoming.

Representing Appellee: Peter K. Michael, Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Wendy S. Ross, Senior Assistant Attorney General. Argument by Ms. Ross.

Guardian Ad Litem: Dan S. Wilde, Deputy State Public Defender and Aaron S. Hockman, Chief Trial and Appellate Counsel, Wyoming Guardian Ad Litem Program. Mr. Wilde appearing but not arguing.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

BURKE, Chief Justice.

[¶1] Appellant, Kenneth Anastos, appeals the district court's termination of his parental rights to his infant daughter, AA. We affirm.

## ISSUES

[¶2] Appellant presents two issues, which we reword as follows:

1. Was there sufficient evidence to support the jury's finding that the statutory requirements for the termination of parental rights were satisfied?

2. Did the district court abuse its discretion when it denied Appellant's motion for judgment as a matter of law?

## FACTS

[¶3] AA was born in January of 2014. At the time, Appellant was incarcerated in the Wyoming State Penitentiary. AA lived with her mother and her mother's boyfriend. On February 11, 2015, AA was taken into protective custody, and two days later the juvenile court placed her in the custody of the Department of Family Services (DFS), which placed her in foster care.

[¶4] On July 14, 2016, DFS filed a petition to terminate the parental rights of both AA's mother and Appellant. The mother failed to answer the petition or appear at the hearing, and her parental rights were terminated on November 21, 2016. Appellant answered the petition, and demanded a jury trial.

[¶5] Prior to trial, the parties stipulated that Appellant was incarcerated from March 30, 2011, through April 13, 2014. He was then released on parole, which was revoked four months later. From then until the date of trial, a period of thirty-one months, he was either incarcerated or in mandatory inpatient treatment for twenty-four months and free of incarceration for seven.

[¶6] At trial, Appellant testified about an even longer criminal history, including a 2003 conviction for assault and battery on a three-year-old child. He admitted that he had never successfully completed any of his terms of parole, all of which were revoked because of his methamphetamine use. He had never successfully completed an inpatient treatment program. Approximately thirty-seven years of age at the time of trial, Appellant had an extensive history of criminal convictions and incarceration. He agreed that he had been incarcerated a majority of the time since he was eighteen years old.

[¶7] Appellant also testified that he is not AA's biological father. However, he signed an Affidavit of Paternity one week after AA was born, while he was still in prison. It was therefore undisputed that he is AA's legal father. Nevertheless, he conceded that AA had never lived with him, and the longest he had ever spent with her was three days.

[¶8] Appellant's DFS caseworker testified that she had met with him on May 7, 2015. He was not in custody at the time. She explained to him that, consistent with the juvenile court's order, he would need to have three clean urinalysis tests before he could have visitation with AA. Appellant submitted a sample that day, which proved to be negative. He submitted another negative sample on May 29, 2015. However, his third urinalysis, done on June 1, 2015, was positive for methamphetamine, and the scheduled visitation with AA was cancelled. The DFS caseworker made telephone contact with Appellant again on June 15, 2015. He told her he was in Utah and would not be back in Wyoming for several weeks.

[¶9] Appellant was arrested on September 29, 2015, for an outstanding warrant and for possession of methamphetamine. While he was incarcerated on those charges, the DFS caseworker met with him and discussed his case plan. The plan required him to obtain and maintain stable housing and employment, complete a psychological evaluation, complete an addiction severity index examination and follow all recommendations, and to submit to random urinalysis testing. She

testified that, as of the trial date, Appellant had not met any of these requirements.

[¶10] On January 8, 2016, Appellant entered an inpatient treatment program. His DFS caseworker spoke with him on January 14, and explained that if he stayed in the program for a month, he could have visitation with AA. She spoke with Appellant again on January 20 to confirm that if he stayed in treatment two more weeks, she would bring AA to him for visitation. He left the treatment facility the next day without completing his treatment. The DFS caseworker stated that Appellant had not had any visitation or other contact with AA since she was taken into protective custody in February of 2015.

[¶11] The jury found that DFS had proven by clear and convincing evidence the facts necessary to terminate Appellant's parental rights. The district court entered the order terminating his parental rights on March 27, 2017. Appellant has appealed that order.

## DISCUSSION

### First Issue: Sufficiency of the Evidence

[¶12] Wyo. Stat. Ann. § 14-2-309 (LexisNexis 2015) provides several bases for termination of parental rights. In its petition, DFS alleged that Appellant's parental rights should be terminated under Wyo. Stat. Ann. § 14-2-309(a)(i) (child left with another without support or communication); (iii) (child abused or neglected, and reasonable efforts to rehabilitate the family were unsuccessful); (iv) (parent incarcerated and unfit); (v) (child in foster care and parent unfit); and (vi) (child abandoned). The jury found that DFS had proven by clear and convincing evidence the elements required to terminate Appellant's parental rights under § 14-2-309(a)(i), (iv), (v), and (vi).[1] On appeal, Appellant claims that DFS presented insufficient evidence to support termination of his parental rights on any of these four bases.

[¶13] Our standard of review on this issue has been explained this way:

> We apply traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting ter-

---

1. The jury found that DFS had not proven the elements of § 14-2-309(a)(iii).

mination. We examine the evidence in the light most favorable to the party prevailing below, assume all favorable evidence to be true, and disregard conflicting evidence presented by the unsuccessful party. Because the right to associate with one's family is fundamental, however, we strictly scrutinize petitions to terminate parental rights. As part of our strict scrutiny standard, we require that a case for termination of parental rights must be established by clear and convincing evidence. Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable.

*RGS v. State, Dep't of Family Servs. (In re KGS)*, 2017 WY 2, ¶ 14, 386 P.3d 1144, 1147 (Wyo. 2017) (quoting *In re HLL*, 2016 WY 43, ¶ 39, 372 P.3d 185, 193 (Wyo. 2016)).

 [¶14] On appellate review, it is not necessary to consider the sufficiency of the evidence under each statutory subsection. Sufficient clear and convincing evidence on any one basis is adequate to affirm the termination of parental rights. *In re AE*, 2009 WY 78, ¶ 12, 208 P.3d 1323, 1327 (Wyo. 2009). We find there was sufficient clear and convincing evidence to support termination of Appellant's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(iv). That subsection provides that parental rights may be terminated upon clear and convincing evidence that:

> The parent is incarcerated due to the conviction of a felony and a showing that the parent is unfit to have the custody and control of the child.

Prior to trial, Appellant stipulated that there was clear and convincing evidence to show that he was currently incarcerated due to a felony conviction. He claims, however, that DFS failed to prove by clear and convincing evidence that he was unfit to have custody and control of the child. Citing *AJJ v. State (In re KMJ)*, 2010 WY 142, ¶ 17, 242 P.3d 968, 971 (Wyo. 2010), he correctly contends that the issue of his fitness at trial was one of his present fitness, although he acknowledges that his history and patterns of past behavior may be considered in making that decision.

[¶15] While there is no statutory definition of the term "unfit," we have previously recognized: "[F]itness includes the ability to meet the ongoing physical, mental and emotional needs of the child. Whether a parent is fit to have custody and control of a child is a decision that must be made within the context of a particular case and depends upon the situation and attributes of the specific parent and child." *AJJ*, ¶ 15, 242 P.3d at 971 (quoting *JLW v. CAB*, 2010 WY 9, ¶ 19, 224 P.3d 14, 19 (Wyo. 2010) (internal quotation marks and citations omitted)). Our review of the record reveals clear and convincing evidence sufficient for a jury to find that Appellant was unable, at the time of trial, to meet any of AA's ongoing needs.

 [¶16] Appellant has an extensive history of criminal convictions and incarceration. By his own admission, he had been incarcerated a majority of the time since he was eighteen years old. We recognize that "incarceration alone is insufficient to establish unfitness." *In re Adoption of JLP*, 774 P.2d 624, 630 (Wyo. 1989). However, Appellant was in prison at the time of the trial, and did not anticipate being released on parole for more than a year. This precluded him from meeting AA's physical, mental, and emotional needs at the time of trial. Moreover, he also admitted that he had never successfully completed a period of parole, all of which were revoked because of his methamphetamine use.

[¶17] Additionally, Appellant admitted at trial that, in 2003, he was found guilty of assault and battery on a three-year-old child, a son he had with another mother. He declined to answer several questions about this incident, citing his Fifth Amendment privilege. However, he explained: "What it was was the soft spot on my kid's head, which everybody knows the plate grows together, and they were saying I dropped my kid on his head." We have observed that a parent's "attempt to minimize the event and his failure to take responsibility for his past abusive conduct was important and relevant evidence that the district court could properly take into account in determining Appellant's current parental fitness." *AJJ*, ¶ 17, 242 P.3d at 971. Such evidence was also important and

relevant evidence for a jury to consider in assessing Appellant's fitness as a parent.

[¶18] Appellant had no contact with AA throughout the juvenile proceeding, and only limited contact with her before that. Several months before AA was taken into protective custody, AA's mother had stopped communicating with Appellant because she had a new boyfriend and, as a result, he had no contact with AA for several months before the juvenile proceeding began.

[¶19] Finally, we consider the evidence of Appellant's history of substance abuse. He admitted that all of his parole periods were revoked due to his use of methamphetamine. His use of methamphetamine prevented him from visitation with AA. His departure from an inpatient treatment facility prevented a second opportunity for visitation with AA. He admitted at trial that his last significant period of sobriety, when he was not imprisoned, had been for about a year and a half starting in 2008.

[¶20] Taking this evidence together, and viewing it in the light most favorable to DFS, we conclude that there was sufficient evidence to support the jury's findings. We recognize that the right to associate with one's family is fundamental, and that we strictly scrutinize petitions to terminate parental rights. In this case, however, we find that the evidence was clear and convincing, and allowed the jury reasonably to find that Appellant was not a fit parent under the provisions of Wyo. Stat. Ann. § 14-2-309(a)(iv).[2]

### Second Issue: Denial of Motion for Judgment as a Matter of Law

[¶21] At the close of DFS's case, Appellant moved for judgment as a matter of law pursuant to W.R.C.P. 50(a). His argument, in sum, was that DFS had not followed its rules and regulations in his case; and that the remedy for this failure should be dismissal of the action to terminate his parental rights. The district court took the motion under advisement. Appellant renewed the motion at the close of the case, and this time the district court denied it. Appellant challenges the district court's decision on appeal. "The decision to grant or deny a motion for judgment as a matter of law is reviewed *de novo.*" *Del Rossi v. Doenz*, 912 P.2d 1116, 1119 (Wyo. 1996).

[¶22] Appellant correctly points out that an agency's rules and regulations have the force and effect of law, and are mandatory and binding on the agency. As we stated in *MB v. Laramie County Dep't of Family Servs. ex rel. LB*, 933 P.2d 1126, 1130 (Wyo. 1997): "Rules and regulations have the force and effect of law. *Fullmer v. Wyoming Employment Sec. Comm'n*, 858 P.2d 1122, 1123–24 (Wyo. 1993). An administrative agency, such as DFS, is bound to follow its own rules and regulations. *Id.*" Appellant contends that DFS failed to follow its rules and regulations regarding the time for completing a case plan and assisting him with services.

[¶23] The only rule Appellant contends was violated by DFS is Chapter 2, Section 7(f) of the DFS Rules and Regulations, Child Protection—Children and Family Services. That rule provides as follows:

> A written case plan should be completed within 60 days of out-of-home placement or 30 days of the conclusion of the investigation or assessment, whichever comes first, on all cases that remain open for services.

While this rule establishes deadlines for completing a case plan, it does not govern the provision of services.[3] Accordingly, we will

---

2. Although not necessary to our analysis, we note that the finding that Appellant was not fit to have custody and control of the child also supports termination of his parental rights under Wyo. Stat. Ann. § 14-2-309(a)(v), which provides that parental rights may be terminated upon clear and convincing evidence that "[t]he child has been in foster care ... for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child." Appellant stipulated that

AA had been in foster care for fifteen of the most recent twenty-two months.

3. Although Appellant contends that DFS was deficient in providing services to assist him in reuniting with AA, he does not cite any DFS rule or regulation requiring the agency to provide such services. Wyo. Stat. Ann. § 14-2-309(a)(iii) provides for the termination of parental rights upon clear and convincing evidence that "[t]he child has been abused or neglected by the parent and reasonable efforts by an authorized agency ...

discuss the timing for completion of a case plan, but need not consider Appellant's other contentions.

[¶24] At trial, Appellant established that DFS had not complied with the quoted rule. The DFS caseworker's testimony established that AA was placed in DFS custody—an "out-of-home placement" in the language of the rule—on February 13, 2015. She agreed that, under the rule, a case plan should have been completed for Appellant by April 13, 2015. She admitted that Appellant's case plan was not completed until June 29, 2015.[4]

[¶25] Though DFS does not dispute its failure to comply with the cited rule, it contends that Appellant "must do more than show a rule violation. He must show how the rule violation denied him due process or violated his fundamental rights." We agree, and said exactly that in *MN v. State, Dep't of Family Servs.*, 2003 WY 135, 78 P.3d 232, 239–40 (Wyo. 2003):

> The only rule violation established at trial was that the State was fifteen days late in creating a case plan on one occasion. Mother fails to demonstrate how this violation affected her fundamental rights or impacted the ultimate decision of the district court to terminate her parental rights to MN. Therefore, we find that any non-compliance by the State in this case is harmless. Furthermore, although Mother relies heavily on the case of *MB v. Laramie County Dep't of Family Servs. in Interest of LB*, 933 P.2d 1126, for support of her argument, that case is not dispositive. In *MB*, this court held that the State's rule violations were both numerous and egregious, thus violating the parent's protected rights. In this instance, any alleged violations by the State were minimal in nature.

Clearly, an agency must follow its own rules as they have the force and effect of law. However, a person asserting an agency's rule violations must show how the breach denied her due process or violated her fundamental rights.

[¶26] Like the mother in *MN*, Appellant also relies on *MB v. Laramie County Dep't of Family Servs.* As in *MN*, Appellant has identified only a single rule violation: tardiness in creating a case plan, a violation "minimal in nature." We did not reverse the termination of parental rights in *MB* just because the mother identified several rule violations. We reversed only because "DFS's failure to follow its own rules affected M.B.'s fundamental right to remain the legal parent of L.B." *MB*, 933 P.2d at 1130.

[¶27] In Appellant's case, the evidence establishes that the late completion of his case plan made no difference in the outcome. It was explained to Appellant that he needed to have three negative drug tests before he could have visitation with AA. He did not achieve that. In addition, the DFS caseworker testified that, even after she explained the requirements of the case plan to him, he failed to meet a single one of those requirements. There is nothing in the record to suggest that an earlier explanation of the conditions for visitation with AA or of the case plan requirements would have changed these results. Because DFS's failure to comply with this rule was harmless, we conclude that the district court did not err when it denied Appellant's motion for judgment as a matter of law.

[¶28] Affirmed.

---

have been unsuccessful in rehabilitating the family ... and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent." However, the jury did not find Appellant an unfit parent under this statutory subsection, so DFS's "reasonable efforts" at rehabilitating the family are not at issue in this case.

4. The caseworker mentioned several reasons for this delay. For example, soon after AA was taken into protective custody, her mother, her pre-

sumptive father, and Appellant each identified a different person as AA's father. The caseworker was unable to confirm that Appellant was AA's legal father until she obtained AA's birth certificate a couple of months later. Initially, the caseworker had difficulty contacting Appellant. However, we do not need to determine if these reasons justify or excuse DFS's failure to complete the case plan on time. The parties did not raise this question, and we resolve the matter on other grounds.