BOOMGAARDEN, Justice.
*894 [¶1] Chastity Leann Gillen (Mother), appeals the district court's order terminating her parental rights to her children, MRH and KCS. We affirm.
ISSUE
[¶2] Mother's issues are consolidated as:
Whether there was clear and convincing evidence to support the jury's finding that Mother's parental rights should be terminated.
FACTS
[¶3] The State filed a petition to terminate Mother's parental rights on May 6, 2016.[1] A four-day jury trial began on October 17, 2017. At that time, MRH was five and a half years old and had been in foster care for 62 months. KCS was four and a half years old and had been in foster care for 55 months. The juvenile proceedings in this case-two neglect cases involving MRH and a neglect case involving KCS-began much earlier in MRH's and KCS's lives.
[¶4] When MRH was born, concerns with Mother's alcohol and cannabis use, as well as Mother's and Father's turbulent relationship, caused the Department of Family Services (DFS) to open an assessment case to monitor the family. DFS hoped to prevent any need to take MRH into protective custody. DFS's early efforts proved unsuccessful when, after Cheyenne police responded to a welfare request and found MRH unattended in a house where Mother and several other adults were severely intoxicated, DFS took six-week-old MRH into temporary protective custody. Following a shelter care hearing, the court placed MRH in the State's legal custody, but returned physical custody to Mother on the condition there be no alcohol or sex offenders in the home. MRH returned to foster care a few months later after Mother left MRH with a babysitter and went to Father's house to consume alcohol. Shortly thereafter, the State dismissed this neglect action, and Mother regained custody of MRH.
[¶5] DFS again took MRH into protective custody a few weeks later, when police responded to a call and found Mother near a Cheyenne park with a head injury, intoxicated, and alleging she had been attacked. She claimed someone stole MRH. Police found MRH with a friend of Mother who had asked Mother to leave the baby with her out of concern Mother was too intoxicated to take care of the child. In addition to arresting Mother for filing a false police report, the State charged Mother with misdemeanor child endangerment. Mother pled guilty to the false report charge and ultimately admitted neglect in the second proceeding involving MRH.
[¶6] The third neglect case involved KCS. Following her arrest and guilty plea for false reporting, Mother moved to Rock Springs for a job transfer and to distance herself from Father. Mother stayed in Rock Springs for seven months and gave birth to KCS, while MRH remained in foster care in Cheyenne. Mother returned to Cheyenne for a court date when KCS was two weeks old. Mother went to Father's house, consumed a pint of liquor, and got into a dispute with Father. After Father kicked Mother and KCS out of the house, police found Mother intoxicated, carrying KCS in a snow storm with near zero temperatures. Authorities immediately took KCS, who needed to be treated at the hospital for low body temperature, into protective custody. Mother pled guilty to neglecting KCS and stipulated to KCS's placement in foster care.
[¶7] During the three juvenile proceedings, Mother was arrested and jailed several times, with each incident relating to substance use, domestic violence, or both. She moved around Cheyenne and lived in Rock Springs, North Carolina, and Illinois-where she resided at the time of trial. Mother had several different jobs and sporadic communication with DFS and her children's caregivers, often losing contact for long periods of time. She failed to consistently visit her children or address her substance abuse and mental health issues. The children stayed *895 with the same foster mother in Cheyenne until DFS placed them with Mother's aunt in North Carolina, where they resided at the time of trial. While in North Carolina, both children were diagnosed with, and began continuing therapy for, multiple mental health and behavioral issues.
[¶8] Throughout the juvenile proceedings, Mother's case plan[2] focused on five areas: 1) visiting the children to encourage parent-child bonding; 2) treatment for alcohol and illegal substance abuse; 3) addressing mental health issues and past trauma; 4) maintaining employment and housing to support the children; and, 5) addressing Mother's history of abusive relationships and domestic violence, particularly with Father. The juvenile court held two permanency hearings. In November 2014, the juvenile court acknowledged that DFS had provided reasonable reunification efforts and that Mother had largely not succeeded in achieving her case plan goals but ordered reunification efforts to continue for an additional six months. Following the second permanency hearing in December 2015, the court found that Mother had failed to make progress on her case plan and changed the children's permanency plan from reunification to adoption. Mother did not appeal the court's second permanency order.
[¶9] The State filed termination proceedings on May 6, 2016. The termination petition alleged three grounds: Wyo. Stat. Ann. § 14-2-309(a)(i), (iii), and (v) (LexisNexis 2017). However, the trial court ruled there was insufficient evidence to instruct the jury on Wyo. Stat. Ann. § 14-2-309(a)(i). Following trial, the jury found the State had proven by clear and convincing evidence the elements required to terminate Mother's parental rights to both children under Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v). The trial court accepted the jury's verdict, finding that termination was in the children's best interests, and entered an order terminating Mother's parental rights. Mother timely appealed.
STANDARD OF REVIEW
[¶10] "Because associating with one's family is a fundamental right, we apply strict scrutiny when we evaluate the sufficiency of the evidence supporting the termination of parental rights using the clear and convincing evidence standard." LeBlanc v. State Dep't of Family Servs. , 2017 WY 107, ¶ 20, 401 P.3d 932, 935 (Wyo. 2017). "[W]e ask whether the evidence, when otherwise viewed in the light most favorable to the State-assuming its evidence to be true and disregarding all conflicting evidence-would persuade a reasonable trier of fact that it is highly probable that the statutory grounds stated for termination are true." Id. (citation omitted).
DISCUSSION
[¶11] The jury found grounds to terminate Mother's parental rights under both Wyo. Stat. Ann. § 14-2-309(a)(iii)[3] and (a)(v). Mother argues there was insufficient evidence to support terminating her rights under either subsection. Where, as here, "more than one statutory basis for termination is alleged ... we need not consider all grounds if sufficient evidence supports one of them." LeBlanc , ¶ 21, 401 P.3d at 935-36 (citations omitted); In re ASA , 2018 WY 5, ¶ 14, 408 P.3d 791, 794 (Wyo. 2018) (citing In re AE , 2009 WY 78, ¶ 12, 208 P.3d 1323, 1327 (Wyo. 2009) ) ("On appellate review, it is not necessary to consider the sufficiency of the evidence under each statutory subsection. Sufficient clear and convincing evidence on any one basis is adequate to affirm the termination of parental rights."). In Mother's case, we consider only Wyo. Stat. Ann. § 14-2-309(a)(v), which requires clear and convincing evidence: "(1) that the children have been in *896 foster care under the responsibility of the State for fifteen of the most recent twenty-two months; and (2) that [the parent] is unfit to have custody and control of the children."[4] In re AGS , 2014 WY 143, ¶ 20, 337 P.3d 470, 477 (Wyo. 2014) (citing Wyo. Stat. Ann. § 14-2-309(a)(v) ).
[¶12] Mother admits MRH had been in the State's legal custody for 62 months and KCS had been in state custody for 55 months, at the time of trial. Mother argues, however, that DFS delayed Mother's ability to accomplish her case plan goals and prolonged the children's time in state custody. Whether the children have been in foster care for 15 of the most recent 22 months is a simple mathematical question, In re AGS , ¶ 21, 337 P.3d at 477, unrelated to the reasonableness of DFS's efforts toward reunification. In re SJJ , 2005 WY 3, ¶ 32, 104 P.3d 74, 82-83 (Wyo. 2005) (holding that Wyo. Stat. Ann. § 14-2-309(a)(v) does not require reasonable efforts to rehabilitate the family). The record contains clear and convincing evidence that MRH and KCS were in foster care under the responsibility of the State for more than 15 of the most recent 22 months.
[¶13] We next consider whether the State proved by clear and convincing evidence that Mother is unfit to have custody and control of her children. "[F]itness includes the ability to meet the ongoing physical, mental, and emotional needs of the children." LeBlanc , ¶ 22, 401 P.3d at 936 (citations omitted). Fitness also "relates to a parent's ability to provide or maintain a 'positive, nurturing parent-child relationship.' " Id. (quoting Matter of GP , 679 P.2d 976, 1005 (Wyo. 1984) ). Factors we have considered when evaluating fitness include:
1) inability to assist with therapy and recovery of a child with significant mental health needs; 2) lack of contact with and expressed lack of desire to take custody of the child; 3) contribution to the child's mental health or behavioral problems; 4) unstable living situation relating to employment or maintenance of a suitable home; 5) criminal record, particularly one primarily related to drug use, or a pattern of ongoing drug use; 6) failure to take responsibility for past conduct; 7) lack of emotional bond with the child; 8) failure to develop child-rearing skills; 9) convictions for crimes involving a potential for harming the child; 10) inability to monitor or make healthy nutritional choices or to provide a safe environment; 11) a history of surrounding herself and the children with unsafe individuals; and 12) the child has become upset by or resistant to visitation with the parent.
Id. ¶ 23, 401 P.3d at 936 (citations omitted). We will determine whether Mother is fit to have custody and control of MRH and KCS within the context of this particular case. In re ASA , 2018 WY 5, ¶ 15, 408 P.3d 791, 794 (Wyo. 2018) (quoting AJJ v. State (In re KMJ) , 2010 WY 142, ¶ 15, 242 P.3d 968, 971 (Wyo. 2010) ). Her fitness or lack thereof "is to be measured at the time of the termination trial;" however, Mother's past behavior is relevant to our fitness determination. LeBlanc , ¶ 23, 401 P.3d at 936 (citations omitted).
[¶14] When viewed in the light most favorable to the State, the record provides ample, clear and convincing evidence to support the jury's verdict that Mother was not fit to have custody and control of MRH and KCS. For example, testimony at trial established that both children were prone to violent outbursts, including incidents of choking, and required ongoing play therapy and other care to help them cope with and overcome those problems. Mother's aunt testified that the children required consistency in their lives and they suffered screaming fits or other outbursts when they encountered surprises or deviations in their daily schedules. The children also required regular occupational therapy to help them with sensory deprivation issues, and KCS required speech therapy. Each child's significant needs required the close and daily involvement of Mother's aunt; yet, the record contains no *897 evidence that Mother was aware of her children's needs or able to provide the special care the children required.
[¶15] In addition, multiple witnesses testified that Mother infrequently visited her children and there was little to no emotional bond between them by the time of trial. Mother cancelled or did not show up for many of the supervised visits scheduled in Cheyenne, and she did not establish sufficient stability to warrant unsupervised visits. Mother occasionally visited the children through phone or Skype calls, but those visits tapered off over time and Mother's aunt testified the children were often upset following the calls. Mother's last Skype call with the children occurred in March 2015. Mother did not have any approved in-person visits with the children after they moved to North Carolina. Mother testified that the last time she saw the children in person was in March 2014 when she moved to North Carolina unannounced and surprised her aunt and the children at their church. The unannounced visit caused MRH to have a panic attack and prompted the Wyoming juvenile court to enter a no contact order between Mother and the children. Mother did not appeal that order or seriously work to lift the order or reestablish visitation. Witnesses also testified that the children had stopped referring to their Mother and that reestablishing visits would be akin to reintroducing Mother to the children.
[¶16] Regarding Mother's employment and the stability of her living situation, Mother continued to have problems maintaining stable employment and housing that would allow her to care for MRH and KCS. Mother regularly moved while she was in Cheyenne, usually living with Father, friends, or in shelters. When she lived in Rock Springs, North Carolina, and Illinois, she usually stayed at other people's homes or in shelters. Her transience and frequent criminal arrests for domestic violence and alcohol and drug-related violations prevented her from maintaining consistent employment and regularly paying her child support obligations. By the time of the trial, Mother had resided in Illinois for over two years and held a job at a grocery store for more than a year. However, she continued to stay with her father at his home, despite her father's history as an abuser. That Mother chose to live with her abusive father when she had other family members in Illinois further demonstrated that Mother had not addressed her problems with avoiding abusive relationships. Mother admitted at trial that her father's house was not a safe environment for her children.
[¶17] Mother's inability to provide MRH and KCS a safe environment was also evidenced by her failure to maintain consistent sobriety, obtain mental health therapy or medication, or follow the recommendations of mental health providers. Mother was diagnosed with symptoms consistent with alcohol dependence and cannabis abuse, post-traumatic stress disorder, major depression, and impulse control disorder. She participated in various substance abuse treatment programs over the years and completed over six months of intensive residential treatment in Casper, Wyoming. Yet, Mother continued to abuse alcohol and other substances after treatment. Her continued substance abuse resulted in numerous criminal proceedings, including a driving under the influence charge in Illinois in 2016 and a substance-abuse related arrest in Illinois in 2017. At the time of trial, Mother was still completing a period of treatment required by an Illinois court and had not demonstrated consistent sobriety. She regularly attended counseling with her pastor, but he was not an Illinois-licensed mental health provider.
CONCLUSION
[¶18] Mother admitted that MRH and KCS were in foster care under the State's responsibility for well over 15 of the most recent 22 months. The State presented clear and convincing evidence that, at the time of trial, Mother was not able to meet MRH's or KCS's physical, mental, or emotional needs. Through Mother's own actions, she lost contact with her children and could not provide a positive, nurturing, or safe environment for them. We therefore conclude the State met its burden of proving Mother was unfit to have custody or control of the children and, having satisfied both elements of Wyo. Stat. Ann. § 14-2-309(a)(v), we affirm the district *898 court's order terminating Mother's parental rights.

The State petitioned to terminate the parental rights of both Mother and Richard Hernandez (Father), a registered sex offender. Father voluntarily relinquished his parental rights to both children. The order terminating Mother's rights is the only order on appeal.

For ease of reference, we refer in this opinion to a single case plan although DFS created or updated multiple case plans for Mother. Because the plans are so similar, it is unnecessary to distinguish between them here.

Under Wyo. Stat. Ann. § 14-2-309(a)(iii), the parent-child relationship may be terminated upon clear and convincing evidence that, "The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent[.]"

Mother's counsel argued for the first time at oral argument that there was an error in the jury instructions on Wyo. Stat. Ann. § 14-2-309(a)(iii). Because the alleged error is unrelated to the instructions on Wyo. Stat. Ann. § 14-2-309(a)(v), we do not consider this issue or whether Mother timely raised it.