# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 47

APRIL TERM, A.D. 2024

April 29, 2024

GRACIE and JEFF RICHARDSON,
Guardians of Jeffery Richardson,

Appellants
(Petitioners),

v.                                                          S-23-0094

STATE OF WYOMING, ex rel. WYOMING
DEPARTMENT OF HEALTH,

Appellee
(Respondent).

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
   Maureen Donohoue Howell, Donohoue Law Office, Lander, Wyoming.

*Representing Appellee:*
   Bridget L. Hill, Wyoming Attorney General; Christina F. McCabe, Deputy Attorney General; Jackson M. Engels, Senior Assistant Attorney General; Melissa S. Bartley, Senior Assistant Attorney General. Argument by Ms. Bartley.

*Before FOX, C.J., and *KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Gracie and Jeff Richardson (the Richardsons) appeal the district court's order affirming the Department of Health's (the Department) decision to remove respite services from their son JMR's individual plan of care under the Home and Community Based Services Waiver Program (HCBS Program).[1]  We also affirm.

### *ISSUE*

[¶2]    The Richardsons raise three issues which we rephrase as one:

> Whether the Department acted in accordance with law when it
> removed respite services from JMR's individual plan of care.

### *FACTS*

[¶3]    The relevant facts are undisputed.  The Richardsons are the legal guardians of their adult son JMR who suffers from severe developmental and intellectual disabilities.  JMR is unable to care for himself without the help of others and requires full-time care.  He receives the highest level of Medicaid benefits offered through the HCBS Program administered by the Department.[2]

[¶4]    The HCBS Program offers numerous services to participants like JMR to meet their individually assessed needs.  These services include, among others, adult day services, community living services, and respite services.  The providers of these services are required to bill each service based on set rates, as listed in the Department's *Comprehensive and Supports Waiver Service Index* (the Index).  Relevant here, the Index requires providers of respite and adult day services to bill based on units of service, with a single unit of service defined as fifteen minutes.  It also requires providers of community living services to bill at a daily rate, which is defined as a twenty-four-hour period.  To direct these services, the Department establishes an individual plan of care and budget amount for each participant along with a care team.  Each individual plan of care is updated annually.

---

[1] The Department defines "Respite care" as services provided: "(A) On a short-term basis pursuant to the individual plan of care; (B) To a participant who is unable, unassisted, to care for himself or herself; and (C) Because the participant's primary caregiver is absent or in need of relief from furnishing such services." Department of Health, Medicaid, *Current Rules and Regulations*, Chapter 1 § 3(b)(ccxviii) (2011 to current).

[2] "Medicaid is a joint federal-state program designed to provide medical assistance to low-income families and individuals 'to help such families and individuals attain or retain capability for independence or self-care.'" *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1178 (10th Cir. 2003) (quoting 42 U.S.C. § 1396).

[¶5]    In 2016, JMR was admitted to the Wyoming Life Resource Center for temporary services after flooding made his home unsafe.  Prior to his discharge from the Center, the Department entered into a settlement agreement (2017 Settlement Agreement) with the Richardsons to establish an individual plan of care for JMR that permitted him to spend his individual budget amount on adult day services, residential habilitation services (community living services), and respite services.

[¶6]    In 2021, the Department reviewed JMR's individual plan of care pursuant to a quality improvement review.  The Department discovered JMR's providers had been billing for respite services at the same time JMR had been receiving community living services.  Under the Index, providers are not authorized to bill for both the daily rate of community living services and the fifteen-minute units of respite services.  The Department, relying on the Index, notified the Richardsons that it was required to remove respite services from JMR's individual plan of care.

[¶7]    The Richardsons responded by requesting an administrative hearing.  The Department granted the request and referred the matter to the Office of Administrative Hearings (OAH).  OAH conducted a two-day hearing wherein both parties presented witness testimony and exhibits.  Soon after, the hearing examiner upheld the Department's decision to remove respite services from JMR's individual plan of care based on the Index.  The Department issued a final decision adopting the hearing examiner's proposed findings of fact and conclusions of law.  The Richardsons appealed to the district court raising several issues of law and fact.  The district court affirmed.  The Richardsons appealed to this Court raising only questions of law.

### STANDARD OF REVIEW

[¶8]    This Court reviews agency actions as if the case came directly from the agency and gives no deference to the district court.  *Monaghan Farms Inc. v. Bd. of Cnty. Comm'rs of Albany Cnty.*, 2023 WY 31, ¶ 7, 527 P.3d 1195, 1201 (Wyo. 2023) (citation omitted).  The scope of our review is guided by the Wyoming Administrative Procedure Act (WAPA), which requires this Court to set aside an agency decision found to be "not in accordance with law."  Wyo. Stat. Ann. § 16-3-114(c)(ii)(A) (2023).  We review de novo the Department's conclusions of law and its interpretation of statutes and implementing regulations.  *Monaghan Farms Inc.*, 2023 WY 31, ¶ 8, 527 P.3d at 1201 (citations omitted).

### DISCUSSION

[¶9]    The Richardsons argue the Index and quality improvement review are not properly promulgated rules under WAPA and thus the Department did not act in accordance with law when it relied on them to remove respite services from JMR's individual plan of care.  They also contend the Department violated the plain language of the 2017 Settlement Agreement by removing these services.  We address each argument in turn.

### I. The Index and the Department's Quality Improvement Review.

[¶10] The Department's rules and regulations, when adopted pursuant to statutory authority and properly promulgated, have the force and effect of law. *Matter of ASA*, 2018 WY 5, ¶ 22, 408 P.3d 791, 795 (Wyo. 2018) (citation omitted); *see also Fullmer v. Wyo. Emp. Sec. Comm'n*, 858 P.2d 1122, 1123–24 (Wyo. 1993). The Department "is bound to follow its own rules and regulations." *ASA*, 2018 WY 5, ¶ 22, 408 P.3d at 795 (citation omitted). As we discuss below, the Department followed its own rules and regulations when it relied on the Index to remove respite services from JMR's individual plan of care.

[¶11] The Index is a document the Department periodically issues listing the services, and corresponding billing rates, available to participants in the HCBS Program.[3] *See* Wyoming Department of Health, Behavioral Health Division, *Comprehensive and Supports Waiver Service Index* at 29–30 (2019). The HCBS Program is a Medicaid program authorized through the federal Social Security Act. 42 U.S.C. § 1396n (2018). It is statutorily authorized in Wyoming at Wyo. Stat. Ann. § 42-4-103(a)(xvii) (authorizing "[s]ervices provided under a federal home and community based waiver"). Under Wyo. Stat. Ann. § 42-4-104(a)(iv), the Department is mandated to "[a]dopt, amend and rescind rules and regulations" in accordance with WAPA to administer the HCBS Program.

[¶12] The Department asserts the Index is a rule with the force and effect of law because it was incorporated by reference when the Department adopted Chapters 45 and 46 of its Medicaid regulations. Under WAPA:

> An agency may incorporate, by reference in its rules and without publishing the incorporated matter in full, all or any part of a code, standard, rule or regulation that has been adopted by an agency of the United States or of this state, another state or by a nationally recognized organization or association, provided:
>
> (i) The agency determines that incorporation of the full text in agency rules would be cumbersome or inefficient given the length or nature of the rules;
>
> (ii) The reference in the rules of the incorporating agency fully identifies the incorporated matter by location, date and

---

[3] The Department has issued multiple versions of the Index since this matter began. Each version is identical with respect to the rules at issue in this case. Nonetheless, the 2019 version of the Index was in effect at the time the Department removed respite services from JMR's individual plan of care. We will therefore refer to and cite the 2019 Index. The most recent version (2024) can be accessed through the Department's website: https://health.wyo.gov/wp-content/uploads/2024/03/DD-Waiver-Service-Index-Effective-2024.4.1.pdf (last accessed April 2, 2024).

otherwise, and states that the rule does not include any later amendments or editions of the incorporated matter;

(iii) The agency, organization or association originally issuing the incorporated matter makes copies of it readily available to the public;

(iv) The incorporating agency maintains and makes available for public inspection a copy of the incorporated matter at cost from the agency and the rules of the incorporating agency state where the incorporated matter is available on the internet as defined in W.S. 9-2-3219(a)(iii); and

(v) The incorporating agency otherwise complies with all procedural requirements under this act and the rules of the registrar of state agency rules governing the promulgation and filing of agency rules.

Wyo. Stat. Ann. § 16-3-103(h).

[¶13]  In line with WAPA, the Department's Medicaid rules and regulations expressly incorporated the Index by reference.  *See* Department of Health, Medicaid, *Current Rules and Regulations*, Chapter 45, § 35; Chapter 46 § 21 (2019).  Chapter 45, Section 35 states:

**Section 35. Incorporation by Reference.**
(a) For any code, standard, rule, or regulation incorporated by reference in these rules:

(i) The Department has determined that incorporation of the full text in these rules would be cumbersome or inefficient given the length or nature of the rules;

(ii) The incorporation by reference does not include any later amendments or editions of the incorporated matter beyond the applicable date identified in subsection (b) of this section; and

(iii) The incorporated code, standard, rule, or regulation is maintained at the Department and is available for public inspection and copying at cost at the same location.

(b) Each code, rule, or regulation incorporated by referenced in these rules is further identified as follows:
. . . .

4

(iv) Referenced in Sections 2, 5, 6, 8, and 31 of this Chapter is **Wyoming's Comprehensive and Supports Waiver Service Index**, incorporated as of the effective date of this Chapter and can be found at https://health.wyo.gov/behavioralhealth/dd/servicesandrates/.

*Id.* (emphasis added). Chapter 46, Section 21 contains essentially the same language. *See* Department of Health, Medicaid, *Current Rules and Regulations*, Chapter 46, § 21 (2019). Notably, the Richardsons did not challenge the Department's promulgation of Chapters 45 and 46 or any of the rules articulated within them. Because the Index is properly incorporated by reference it constitutes a rule with the force and effect of law. *See* Wyo. Stat. Ann. § 16-3-103(h); *ASA*, 2018 WY 5, ¶ 22, 408 P.3d at 795 (citation omitted).

[¶14] The Index, under the section titled "Respite," clearly states respite services are billed in 15-minute units, such services "shall not be provided during the same time period as other waiver services," and "[r]espite shall not replace community living or day services." *Comprehensive and Supports Waiver Service Index* at 29–30. Further, it states "[t]he 15-minute unit and daily rate shall not be billed for a participant on the same day." *Id.* at 30. The "Community Living Services" section states such services are billed at daily rates with the same billing limitations as respite services. *See id.* at 14. As such, JMR's providers were not permitted to concurrently bill both respite and community living services. The Department properly relied on the Index when it removed respite services from JMR's individual plan of care while he continues to receive community living services.

[¶15] The Richardsons also challenge the Department's use of its quality improvement review, contending this review cannot be used to remove respite services from JMR's individual plan of care because it is not a properly promulgated rule under WAPA. Their argument is belied by WAPA's definition of a "rule" which expressly excludes agency "[s]tatements concerning only the internal management of an agency and not affecting private rights or procedures available to the public[.]" Wyo. Stat. Ann. § 16-3-101(b)(ix)(A). The Department uses the quality improvement review as a management tool to randomly review individual plans of care for any errors or deficiencies in the plans. This review helps ensure the financial integrity of the Medicaid system. Though this review led to the removal of respite services from JMR's individual plan of care, the Department only used it to identify the billing deemed erroneous under the Index. Thus, the Department's review of JMR's individual plan of care did not affect his private rights or the procedures available to the public and only concerns the internal management of the Department. *See* § 16-3-101(b)(ix)(A). Because the quality improvement review is not considered a "rule" under WAPA, the Department was not required to undergo the rulemaking process before implementing it. *See* Wyo. Stat. Ann. § 16-3-103 (articulating the general procedures for properly promulgating a valid "rule").

## II.    The 2017 Settlement Agreement

[¶16]  The Richardsons argue the plain language of the 2017 Settlement Agreement obligates the Department to continue providing JMR with respite services in addition to community living services.  We apply the same legal principles to settlement agreements as we do to contracts.  *Colton v. Town of Dubois*, 2022 WY 138, ¶ 15, 519 P.3d 976, 980 (Wyo. 2022) (citations omitted); *Allen v. Anderson*, 2011 WY 94, ¶ 8, 253 P.3d 182, 183 (Wyo. 2011) (citations omitted).  We interpret settlement agreements de novo, consider the specific language used within the agreement, and enforce that language if it is unambiguous.  *Colton*, 2022 WY 138, ¶¶ 15–16, 519 P.3d at 980–81; *Allen*, 2011 WY 94, ¶ 8, 253 P.3d at 183.

[¶17]  The 2017 Settlement Agreement in paragraph 2.1 unambiguously states the key terms at issue.  It provides, in relevant part:

> 2.1    The Petitioner [JMR] will receive a presumptive set individualized budget amount for Waiver services not to exceed two-hundred fifteen thousand, one hundred and seventy-eight dollars and sixty-one cents [$215,178.61] for a new plan year to begin not later than April 1, 2017.  The Parties agree that this individual budget amount is intended to be a presumptive set rate and shall be in effect for the entirety of Petitioner's plan year, beginning April 1, 2017 and ending March 31, 2018, except as provided by Section 2.1.9.  The Parties agree that this budget amount may be spent for the following units of services:
>
> . . . .
>
> 2.1.5. 5000 units of Respite services,
> 2.1.6. 365 units of level 6 Residential Habilitation services,
> 2.1.7. 7280 units of Adult Day Services for high needs individuals.
>
> . . . .

This language demonstrates the parties agreed JMR may receive respite services, community living services, and adult day services.  However, no term in the agreement states the manner in which JMR is to receive these services or permits JMR's providers to concurrently bill for such services.  The Department cannot permit concurrent billing because it cannot act contrary to its own regulations, as discussed above.  *ASA*, 2018 WY 5, ¶ 22, 408 P.3d at 795 (stating an agency "is bound to follow its own rules and regulations." (citation omitted)).  Further, the agreement provides that any changes to the billing rates for the listed services, or caps on the number of service units, "shall" modify

6

the agreement to implement the change.[4]  Thus, the agreement requires providers to bill services in compliance with the current rates and limitations under the law, which are stated within the Index.  The Department's removal of respite services from JMR's individual plan of care did not violate the parties' 2017 Settlement Agreement.

## *CONCLUSION*

[¶18]  The Department acted in accordance with law when it removed respite services from JMR's individual plan of care.  Accordingly, we affirm.

---

[4] Paragraph 2.1.9 provides:

> Should the rates paid by DOH for the services listed above or the caps for number of services units for a given service change as a result of legislative funding and approval from the Centers for Medicare and Medicaid services, then that modification shall affect this individual program plan and individual budget amount shall be modified solely to implement the approved change.